ELIZABETH W. EMERSON *vs.* LOWELL GAS LIGHT COMPANY.
HANNAH A. EMERSON *vs.* SAME.

In an action against a gas light company to recover damages for an injury to the plaintiff's health caused by an accidental escape of gas from a main pipe in a public street, from which it passed through various sewers and drains into the plaintiff's cellar and house, the plaintiff, in connection with evidence tending to show that the defendants did not use due diligence in finding and stopping the leak, after notice thereof, may show, by witnesses who passed along the street and lived in the neighborhood of the plaintiff's house at the time, to what extent the gas escaped into the street; and also that it escaped from the same sewer through which it reached the plaintiff's house into other houses at points beyond, if the defendants had notice thereof, but not otherwise; but he cannot show that wherever the gas escaped into other houses, sickness followed.

In such action, a witness who is experienced in digging holes through frozen earth may testify how long a time and how much labor it would take to dig such holes as have been made through frozen earth by the defendants in searching for the leak, for the purpose of

showing whether they have exercised reasonable diligence in finding and stopping the same.

In such action, the defendants may show that the plaintiff made no claim on them for damages for more than two years after the injury complained of; but they may not show that the plaintiff, while sick in bed, in conversation about his sickness, did not then ascribe it to the effects of gas, and said nothing as to the cause of it.

If, in such action, it is made a question whether the inhalation of gas is noxious to health, and it is established that it is so, the belief of the defendants' agent upon the subject is unimportant, for the purpose of affecting the question of the care and diligence which it was their duty to exercise, in order to guard against its deleterious effects.

The plaintiff in such action, in order to prove due care on his part, may not prove that the defendants' agent advised the occupants of a neighboring house, into which gas had escaped from the same leak, what to do to avoid ill consequences from it, and that he did the same things so advised, if such agent gave directions to the plaintiff respecting the matter.

Two actions of tort, tried together, against a gas light company for an injury to the plaintiffs' health from the inhalation of gas which escaped from the defendants' pipes.

At the trial in the superior court, before *Putnam,* J., it appeared that in January 1857, the gas escaped from the defendants' main pipe in Middlesex Street in the city of Lowell, under the same circumstances stated in *Hunt* v. *Lowell Gas Light Co.* 1 Allen, 343, and passed under the frozen earth through sewers and drains into the cellar and house occupied by the plaintiffs, on Middlesex Street, of which the defendants had notice ; and that it was several days after they received notice of the escape of the gas, before they discovered the place of the leak in their main pipe.

The plaintiffs introduced evidence tending to show that the defendants did not use due diligence, after receiving notice of the escape of gas, to find and stop the leak ; and offered to call witnesses who passed along the street and lived in the neighborhood of the plaintiffs' house at the time, to prove the extent to which the gas escaped into the street and neighborhood ; but the judge rejected the evidence. The plaintiffs also offered to show that a large number of houses in the neighborhood, the drains of which connected with these sewers, were filled with gas, and that wherever the gas entered, sickness followed, and especially that it entered the house of one Clay, which was adjoining and back of the plaintiffs' house, and was connected with

the same sewer and by the same drain, and that the gas continued on in the sewer east of and beyond their house; but the judge rejected the evidence, confining the proof to the size of the leakage and the amount of gas which escaped at that point. The plaintiffs offered to prove that the defendants' agent went to Clay's house and gave to him directions what to do to avoid ill consequences from the gas, and that at their house they did the same things so advised; but the judge rejected the evidence, the plaintiffs having before testified that the agent gave certain directions to them, which they followed.

It appeared that in order to find the leak the defendants were obliged to dig holes through the frozen earth down to their main pipe, and they introduced evidence to show the number and size of the holes and how long they were employed in digging them. The plaintiffs called a witness experienced in making such excavations, and offered to show by him how long a time and how much labor it would take to dig such holes, but the judge rejected the evidence.

There was conflicting evidence as to whether the inhalation of gas would produce sickness; and, the plaintiffs having testified that they had never said to any person that their sickness was caused by anything else than the gas, the defendants called several witnesses who, as neighbors, visited the plaintiffs while they were quite sick and in bed, and had conversation with them about it, and they were asked, under objection, if on any of these visits either of the plaintiffs said anything about the gas causing her sickness, and each of the witnesses answered that neither of the plaintiffs said anything about the gas causing her sickness, or what was the cause of it. The defendants were also allowed to prove, under objection, that the plaintiffs made no claim upon the defendants for damages until March 1859.

There was evidence tending to show that the defendants' agent, Mr. Bryant, under whose supervision the work of finding and repairing the leak was done, and who for several years had been in charge of their works, and had investigated the subject of gas, and was admitted to be competent in other respects for

his position, but who, it was contended by the plaintiffs, had not used proper care in these cases, and had erred in treating gas as if it would not produce sickness, did not know or believe that gas was noxious to health; and the judge instructed the jury that if this was so, and such belief was consistent with ordinary care in informing himself upon the subject, the fact might be taken into consideration by them, in connection with his means of knowledge, in determining whether the defendants used ordinary care in stopping the leak; and that the defendants were bound to employ agents who were competent, and possessed of such knowledge in relation to gas and its effects as the jury might find on the evidence was at that time the prevailing belief on the subject.

After these instructions had been given, the plaintiffs requested the court to instruct the jury, 1. That the defendants were bound by the same degree of care and diligence, whether their agent, Bryant, knew or believed, or did not know or believe, that the gas was a noxious substance and would produce sickness. 2. That Bryant's ignorance or belief on this point would not enlarge the time which the defendants would be entitled to take, to stop the leak, provided the jury should find that the gas caused the sickness. The judge declined so to instruct them.

The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions.

*D. S. Richardson & A. R. Brown*, for the plaintiffs.

*J. G. Abbott & W. P. Webster*, for the defendants.

MERRICK, J. In support of these actions, the plaintiffs contended, and offered evidence tending to prove, that at the time complained of, gas escaped from a fracture in the defendants' main pipe, laid in Middlesex Street, in the city of Lowell, into the earth and thence through certain adjacent sewers and drains into their house; that the defendants had notice that they were sustaining injury from this cause, and did not thereupon use due care and diligence to find and stop the leak; and that in consequence of their carelessness and negligence the gas continued for several days afterwards to escape and penetrate into the house.

35*

It was in connection with this attempt to show that the defendants had been careless and negligent in performing their duty to find the place of the fracture in their pipe, and to cause it to be repaired, and thereby to prevent the further escape of gas with all reasonable promptitude and dispatch, that the plaintiffs offered to prove by witnesses who passed along the highway and lived in the neighborhood of her house, to what extent the gas escaped into the street. This evidence should not have been excluded. It was material in this, that it tended in some degree to show how rapidly, and in what quantities, the gas was escaping, and thereby afforded some means of judging as to the amount of force and labor which should be applied to arrest its further escape, and the alacrity with which it should be applied. It also had some tendency to indicate the place where the leak occurred, and for that, in connection with other evidence, it might be availed of upon the question whether the defendants had been negligent and careless in not having discovered the leak earlier than they did. And this offer of evidence having been confined to proof concerning gas that was pervading the street under which their pipe was laid, it was in relation to a fact of which the defendants, after notice that gas was, in consequence of some defect in their works, escaping in that vicinity, must be presumed to have had knowledge, or at least reasonable means of knowledge. For the same purpose it was competent for the plaintiffs to show that gas had escaped from the defendants' pipe through the fracture into the sewers east of the plaintiffs' house, and into such of the other houses in the neighborhood of the plaintiffs, as they had been notified that it had penetrated and entered. But evidence that it was in houses other than those into which they had knowledge that it had entered, was inadmissible, because their action could not in any degree have been, or have been required to be, influenced by facts of the existence of which they had received no information and of which they were entirely ignorant.

Upon the question of the due diligence of the defendants in making the excavations in the street which were necessary to enable them to find the place and cause of the leak in their pipe,

the testimony of the witness offered as an expert should not have been excluded, but received and submitted to the jury. On questions of skill or trade, or others of the like kind, persons of skill, or having by long experience acquired peculiar and superior means of forming an accurate judgment upon facts relative to their particular pursuits, are permitted to give their opinions in evidence. 1 Greenl. Ev. § 440. It was erroneous therefore to determine that, although the witness had the requisite qualification from long experience in that kind of work and business to which his testimony was to relate, it ought to be rejected as incompetent. Nor is the objection urged by the defendants that it related to a question upon which the jurors who were to pass upon it were themselves competent judges, sufficient to justify its exclusion. It was intended, by showing with what dispatch, in the judgment of persons experienced in such work and competent to form a reliable opinion concerning it, that which was done by the defendants might have been accomplished, to aid the jury in coming to a conclusion upon the question whether under all the circumstances of this particular occasion, the defendants were not guilty of negligence by failing to employ a sufficient number of men of vigor and activity and of experience in that kind of labor, that the testimony of the witness was offered, and for this purpose it was competent. For if the defendants, in making the excavations in the street which were necessary to enable them to find the place and cause of the leak, occupied more time than was reasonably required for that purpose, such delay and tardiness were circumstances proper to be considered by the jury in forming an opinion upon their alleged inattention and negligence.

To show that the plaintiffs did not ascribe the illness they suffered to the gas which penetrated into their house, and also to contradict some statements they had made upon the subject in giving their testimony, the defendants were allowed to inquire of the witnesses, who visited the plaintiffs during their sickness, whether they said anything about its being caused by gas, or what was the cause of it; to which they severally answered that neither of the plaintiffs said anything as to its cause  These

answers show that the inquiries could lead to nothing material, or anything which could be availed of as evidence in the case. If the court had foreseen what these answers were to be, it should, and would, undoubtedly, have precluded the defendants from proposing the questions which elicited them.

It appears to have been made a question at the trial, upon which conflicting evidence was produced by the parties, whether the properties of illuminating gas were such that its inhalation was noxious and capable of producing, and likely to produce, sickness and disease. Whether insalubrious or not, it is certain that it is disagreeable and offensive when the atmosphere is filled and pervaded by it, and is very dangerous from its liability to explosion, if large quantities are collected and confined in the closed cellars or apartments of a dwelling-house. And therefore it was the duty of the defendants, as it is of all incorporated companies which are invested, for their own profit and advantage, with the great and important privilege of supplying the community with light for private habitations and for other places devoted to public or private use, to exercise due care and diligence in keeping it constantly under their control, and preventing it from escaping into a dwelling-house or place of business, where the inmates or occupants are in such cases involuntarily subjected to its effects, whether they are positively injurious or merely disgusting and offensive. But if its effect is noxious as well as disagreeable, that is a reason why the diligence required to take care of and control it should be still more active and unremitting. The proper subject of inquiry therefore upon the trial was, when it was insisted that gas infused into the air of a dwelling-house is noxious to the health of its occupants, whether such is its usual, necessary or probable effect. And in reference to the duty of the defendants in view of this probable or possible consequence, it could justly make no difference what opinions were entertained by their agent or superintendent upon the subject, whatever pains he may have taken to obtain the best and most reliable information concerning it. If it be a fact that the inhalation of gas will produce sickness or generate disease, and this is to be determined by the

jury upon evidence submitted to them, the defendants were bound to exercise that care and diligence in its control and management which is reasonably sufficient to guard the public against its deleterious and dangerous effects, whether their agents were aware of its bad influence or not. The evidence therefore which the defendants were permitted to introduce respecting the skill or the opinion of Bryant, their agent, was inadmissible for the purpose of affecting the question of care and diligence which it was their duty to exercise, and it ought to have been excluded. As a competent expert, his opinion might have been admissible upon the general question as to the alleged deleterious effect of gas upon the health of persons exposed to it.

The evidence offered by the plaintiffs to show that wherever the gas which escaped from the fracture in the defendants' pipe entered any dwelling-house in the neighborhood of the plaintiffs, sickness followed, was properly excluded. Each separate and individual case must stand upon, and be decided by, the evidence particularly applicable to it. The attending circumstances may be so different, that the occurrence of sickness in one house would have no tendency to show the cause of illness in the occupants of another. If such evidence was admissible, the issues in a single cause might be indefinitely multiplied; and this would tend only to confusion, and to mislead the jury. It was competent for the plaintiffs to show all the facts and circumstances attending their sickness, and to add to that, proof of the opinions of persons of skill and experience as to the cause which produced such sickness, and particularly whether it might have been, or probably was, produced by the gas to which they were exposed in their house; but they were restricted by the rules of evidence to these limits, and could not establish or strengthen the evidence in their own case, by any proof concerning the condition of, or the injuries received by, another person.

So also the evidence offered by the plaintiffs, to prove that they had done for their own protection everything which the agent of the defendants had advised and directed the persons residing in the house of Mr. Clay to do, to avoid ill consequences from the gas escaping into it, was properly excluded. They could only

prove what care they had themselves taken, and it was then to be determined by the jury whether it was sufficient, so far as depended upon that question, to entitle them to recover of the defendants damages for the injury they had suffered.

The defendants were rightly permitted to show that the plaintiffs made no claim on them or on their agent on account of any damages suffered or alleged to have been caused to her by the gas until March 1859. It had some tendency to show that they did not originally attribute their illness to the gas which flowed into their house; and therefore the defendants were entitled to avail themselves of this fact.

But as the rulings in several instances were erroneous, as is above stated, the plaintiffs' exceptions in relation to them must be sustained, and the verdict for the defendants set aside and a new trial granted. *Exceptions sustained.*

In an action against a gas light company to recover damages for an injury to the plaintiff's health caused by an accidental escape of gas from a main pipe through various sewers and drains into the plaintiff's house, which was one of several tenements in the same block, the plaintiff may show that on the same day when the gas was first perceived, his wife sent notice to the defendants by a neighbor that gas was escaping into that block.